**Willy REIMSCHIISSEL, Plaintiff and Appellant,**

v.

**Bert G. RUSSELL, Defendant and Respondent.**

No. 17748.

Supreme Court of Utah.

June 4, 1982.

Gregory B. Wall, Brant H. Wall, Salt Lake City, for plaintiff and appellant.

L. Brent Hoggan, Logan, for defendant and respondent.

STEWART, Justice:

This is an action by plaintiff Reimschiissel against defendant Russell alleging a breach of implied warranty of merchantability under Utah Code Ann., 1953, § 70A–2–314 and 315 for the sale of a diseased cow to plaintiff. The lower court ruled that Reimschiissel had failed to prove that the cow was diseased when sold. On appeal Reimschiissel attacks that ruling of the district court. We affirm the trial court.

In June, 1975, Reimschiissel, a dairy farmer in American Fork and Spanish Fork, Utah, contacted Russell, a livestock dealer in Logan, Utah, to purchase replacement cows for his herd. On June 20, 1975, Russell purchased seventeen head of heifers at the Smithfield, Utah, livestock auction. Before the auction would release the heifers to Russell, the cattle were brand inspected and blood was drawn from each of them to test for brucellosis. Brucellosis is a communicable bacteria, often called "bangs" disease, which is usually characterized by abortion. The blood tests were negative and the cattle were released to Russell by the veterinarian on duty at the auction. One of the heifers purchased by Russell and conveyed to Reimschiissel was known as cow 452.

On June 23, 1975 Russell delivered fourteen of the seventeen cows purchased at the Smithfield auction to Reimschiissel at his dairy farm in American Fork, Utah. In September, 1975, cow 452 had a calf and the cow was placed into Reimschiissel's milking herd. In July, 1976, cow 452 aborted a calf. During the same month, Reimschiissel sold a cow for slaughter and test results showed that it had brucellosis. After tracing the slaughtered cow back to Reimschiissel's herd, a federal veterinarian took blood samples from all of Reimschiissel's cattle and discovered that four additional animals had brucellosis. One of the infected animals was cow 452. Reimschiissel's herd was immediately quarantined in an attempt to discover the source of the disease.

In May, 1977, Reimschiissel called Russell and informed him of the brucellosis outbreak and asked him if he had any insurance. Russell said no and heard nothing further until June, 1979, when he received a letter from Reimschiissel's attorney requesting that negotiations for settlement be commenced or appropriate legal action would be taken. This suit was then filed and the trial court, sitting as the trier of fact, found in favor of the defendant.

 On appeal Reimschiissel argues that he proved by a preponderance of the evidence that the disease originated in cow 452 and that it was infected at the time of sale. It is not our prerogative to determine whether the evidence preponderated on one side or the other. That is the responsibility of the trier of fact. It is only for us to determine whether there is substantial evidence in the record to support the ruling. *Hove v. McMaster*, Utah, 621 P.2d 694 (1980); *Score v. Wilson*, Utah, 611 P.2d 367 (1980).

There are two principal ways of detecting brucellosis in dairy cattle, first by drawing and testing blood, and second by testing the milk given by a cow. The milk test, also known as the "ring test," is conducted by the federal government on dairy cows four times a year.

 Reimschiissel argues that cow 452 was infected at sale because it was impossible to contract the disease from any source after sale. The contention is controverted by the evidence. Several brucelosis tests were run on the cattle prior and subsequent to the time of sale. On June 20, 1975, at the Smithfield auction, the cows sold to Russell were tested for brucelosis with negative results. Cow 452 had a calf in September 1975, and began milking with the rest of the herd. During the ten-month period of milking before the abortion of its second calf, cow 452's milk was tested for brucelosis at least three times, each with negative results. A veterinarian testified at trial that, in his opinion, if a cow had a calf in September of 1975 and began milking at that time, with continued negative results on the ring test, and sometime later showed a positive ring test, the cow would have contracted brucelosis after the latest negative ring test.

Russell also established five possible sources of exposure to infected animals which could have infected Reimschiissel's herd. Brucelosis is a very infectious disease, and may be transmitted from herd to herd by feed, by infected semen used in artificial insemination, by a veterinarian who treats cattle in an infected herd and transmits it to another herd, by being exposed to other infected cattle, or by a milk tester going from farm to farm. Reimschiissel testified that he bought feed every year to supplement that which he grew on his farm; that he inseminated his cows artificially with semen obtained from outside sources; that he employed veterinarians who came to his farm approximately every three months; that a milk tester visited his farm every six weeks to three months; and that his cattle were exposed to neighboring cattle. A veterinarian testified that another herd of cattle in Utah County was infected with brucellosis and was a potential source. Although Reimschiissel discounts the possibility of contamination through these sources, and argues that the blood and ring tests do not necessarily disclose the existence of the brucellosis infection, the trial court was justified in finding

that Reimschiissel failed to meet his burden of proof by a preponderance of the evidence.

There was sufficient evidence in the record to support the trial court's ruling. We therefore need not decide whether timely notice of a breach of warranty was given to the seller of the cattle under § 70A-2-607(3) and (4).

Affirmed. Costs to respondent.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.